**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JESSICA BIGBY,<br>302 Cambridge Road<br>Alexandria, Virginia 22314 | * | |
| | * | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Civ. No.: _____ |
| | * | |
| LAW SCHOOL ADMISSION COUNCIL,<br>662 Penn Street<br>New Town, Pennsylvania 18940 | * | |
| | * | |
| Defendant. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff Jessica Bigby (hereinafter "Plaintiff"), by and through her undersigned counsel, commences this complaint seeking injunctive and declaratory relief against the Law School Admission Council (hereinafter "the LSAC" or "Defendant") for violating the Americans with Disabilities Act, which requires qualified private entities to offer examinations in a place and manner that is accessible to individuals with disabilities and best ensures that the examination accurately reflects, not his or her disability, but rather the individual´s aptitude or achievement level or whatever other factor the examination purports to measure.

## INTRODUCTION

1. Plaintiff has cerebral palsy, strabismus (residual right exotropia - an intermittent turning out of her right eye, and hypertropia - misalignment of her eyes due to imbalance in muscle function), Developmental Coordination Disorder, and Learning Disorder, Not Otherwise Specified (in the area of visual perception).

2.      Plaintiff, currently 31 years old, was born prematurely at only 27 weeks gestation. She weighed less than two and-a-half pounds and required incubation for several weeks. Plaintiff's lungs were not fully formed at birth, and while hospitalized she was treated with Decadrone to increase her chances of survival.   Decadrone's known side-effects include neurodevelopmental complications, as well as cerebral palsy.

3.      As an infant, Plaintiff suffered a stroke and was diagnosed with cerebral palsy; a lifelong brain based neurological disorder that permanently affects both voluntary and involuntary muscle coordination.

4.      As a toddler, Plaintiff developed strabismus, a muscle-based eye disorder that prevents two eyes from coordinating to look in the same direction.   During her life, Plaintiff has undergone three separate surgeries (at ages three, six, and twelve) to correct her strabismus. Plaintiff's strabismus returned at age 25, and given her particular condition, her treating doctor advised her that undergoing a successful corrective surgery was no longer feasible.

5.      When Plaintiff four and-a-half years old, she underwent a psychological evaluation which indicated a diformepancy between her well-developed verbal and auditory processing abilities and her motor, visual, and nonverbal abilities.

6.      From fifth grade onward, Plaintiff attended private schools.   She struggled to complete reading and writing tasks within the same time limitations as most other students. Plaintiff's teachers were very sympathetic about her neurological, muscular, and optical impairments, and thought that her academic difficulties were solely the result of her cerebral palsy and strabismus.   Many of Plaintiff's teachers informally accommodated the impacts of her disabilities, as they understood them to be, with extended time to complete exams.   With these

informal, but consistent, accommodations, Plaintiff was able to achieve good grades, which were commensurate with her acquired knowledge and demonstrated academic abilities.

7.      Plaintiff did not request extended time accommodations for the ACT and SAT college admissions exams because she was not familiar with the procedure to do so.  As a consequence, her scores on these exams were inaccurate measures of her knowledge and abilities.  During college, Plaintiff employed creative strategies to accommodate the effects of her cognitive weaknesses, including the careful selection of courses that did not require her to complete large amounts of reading and writing under strict time constraints.

8.      Plaintiff sat for the GMAT – a computer administered test that is approximately 3 hours and 30 minutes long (3 hours allotted to complete approximately 90 multiple choice questions, and 30 minutes allotted for a single analytical essay, with optional breaks) – in June 2007.  During that time period, her strabismus was only beginning to worsen.  The computerized format of the GMAT had an accommodating effect for Plaintiff because Plaintiff was not required to shift her focus from the test booklet to a Scantron or other separate answer sheet and was permitted to type her response to the writing section, as opposed to writing it by hand.  Additionally, Plaintiff was able to utilize the optional breaks that are afforded to all individuals who sit for the GMAT.

9.      Plaintiff was subsequently admitted to a graduate school and utilized the same strategies that she had in college.  Since that time, however, Plaintiff's strabismus has worsened significantly.

10.     Plaintiff has worked for the U. S. Department of Defense for the past seven years and here, too, has adopted several strategies to accommodate her disabilities.  She takes frequent breaks throughout the day to combat the muscle spasms and pain that occur when she sits for

extended periods of time.  She also works with a computer and stays late after work to complete projects that most of her peers can complete within the regular work day.

11.     Plaintiff's impaired cognitive processing and visual scanning has required that she read slowly and repetitively in order to retain and process written information.  As a consequence, Plaintiff was, and continues to be, unable to complete tasks requiring concentration, reading, and writing in the same conditions, manner, and duration as most people.

12.     In September 2012, Plaintiff underwent a psychoeducational evaluation to gain a better understanding of the cognitive strengths and weaknesses with which she has contended her whole life. She desired to attend law school in Fall 2013 and wanted to equip herself with the skills and strategies needed to compete on a level playing field.

13.     After a comprehensive clinical assessment, Plaintiff's psychologist determined that Plaintiff satisfied accepted diagnostic criteria for Learning Disorder, Not Otherwise Specified, and Developmental Coordination Disorder.  Plaintiff's psychologist recommended that Plaintiff receive no less than 50% additional time for all tests and permission to mark her answers to directly in the test booklet.  Plaintiff's psychologist also recommended that Plaintiff receive an accommodation in her physical environment and be allowed to test on the ground floor of any non-elevator building because she uses canes to ambulate and has difficulty with balance.

14.     Despite her lifelong disabilities and repeated, timely adherence to its policies for requesting test accommodations, Defendant LSAC has on four occasions, denied Plaintiff test accommodations on the LSAT.

15.     Plaintiff sat for the December 2012 administration of the LSAT and did not have enough time to read, comprehend, and answer all of the questions for each section and guessed on a significant number of items.

16.     Plaintiff retained counsel in March 2013 and through counsel requested reconsideration by letter of May 6, 2013.  The LSAC subsequently, by letter of May 21, 2013 denied Plaintiff's request in full for a third time.  In this letter, the LSAC reiterated its prior arguments and also informed Plaintiff that it had reviewed her Scantron answer sheet from the December examination and that her ability to fill in the answers precisely demonstrated that she had no impairments.  This assertion was clearly made without regard to the fact that Plaintiff had to take a great deal of time and effort to fill in the Scantron sheet, and in doing so had less time to read and answer the test questions, and was forced to guess on a significant number of questions in each section.  The LSAC also argued that Plaintiff's score, which was at the mean, demonstrated that she is not disabled.

17.     Since the LSAC's May 21, 2013 denial, Plaintiff has applied to several law schools but has been rejected by them all because her unaccommodated LSAT score is considered too low to meet the admissions requirements.

18.     Plaintiff has registered to take the LSAT in the District of Columbia on October 5, 2013.  By application dated August 7, 2013 Plaintiff once again requested that the LSAC reconsider its earlier decision.  By letter dated August 9, 2013 the LSAC informed Plaintiff that its earlier decisions would stand.

19.     Due to the LSAC's intentional acts of discrimination, the LSAT has been made inaccessible to Plaintiff, who has been denied a fair and equal opportunity to apply for Fall 2013 admission to law school.

20.     Defendant LSAC has discriminated against Plaintiff by failing and/or refusing to provide testing modifications in violation of the Americans with Disabilities Act, as amended (hereinafter "ADA"*), 42 U.S.C. § 12101, *et seq.*  Permanent injunctive relief is necessary to ensure that Plaintiff is no longer excluded from, deterred from, or otherwise discriminated against in taking the LSAT.

## JURISDICTION

21.     These claims arise under the ADA and this Court has subject matter jurisdiction based on a federal question under 28 U.S.C. §§ 1331 and 1343(a)(4).  This Court also has jurisdiction pursuant to: (1) 42 U.S. C. § 2000a, providing for civil actions in this Court by any person subjected to discrimination on the basis of disability in violation of Title III of the ADA; and (2) 28 U.S.C. § 1343 for any civil rights action authorized by law.

22.     This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201(a) and further relief pursuant to 28 U.S.C. § 2202.

23.     Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391, in that Plaintiff has been denied the opportunity to take the LSAT with the accommodations that she is entitled to under the ADA at a test center located in the District of Columbia, which constitutes an act of discrimination within this District.

## PARTIES

24.     Plaintiff is a 31 year old resident of Alexandria, Virginia, who meets all the qualifications to take the LSAT.

25.     Plaintiff is an individual with disabilities under the ADA, and is entitled to testing accommodations on the LSAT.

26. Plaintiff's impairments substantially limit her in the performance of numerous major life activities including, but not limited to, seeing, reading, writing, concentrating, thinking, learning, test-taking, performing manual tasks, and walking. Plaintiff's impairments also substantially limit her operation of several major bodily functions including, but not limited to, the operation of the brain, neurological, and musculoskeletal systems.

27. Defendant is a multi-million dollar private not-for-profit corporation, incorporated in the Commonwealth of Pennsylvania, with its principal office in Newtown, Pennsylvania. Defendant prepares and administers the LSAT, the examination currently required for admission to all accredited law schools. Defendant offers examinations related to post-secondary education throughout the country, including within the District of Columbia, and as such is subject to the non-discrimination and testing accommodation requirements of the ADA.

### The LSAT Examination

28. The LSAT is a standardized test required for admission to all ABA approved law schools, most Canadian law schools, and many non-ABA approved law schools.

29. The LSAT purports to be a standard measure of acquired reading and verbal reasoning skills that are considered essential for success in law school.

30. The LSAC maintains that the LSAT is the only common measure by which the ability of all prospective law students can be measured fairly.

31. The LSAT consists of five 35 minute sections of multiple choice questions. Four of the five sections contribute to the test taker's score. Each section consists of twenty-three to twenty-seven questions. A thirty-five minute writing sample is also administered which LSAC does not score but provides copies to the law school to where the test taker applies.

32.     The multiple choice questions fall into three categories of question types which are labeled as follows:

a.      "Reading comprehension questions" which the LSAT asserts measures one's ability to read with understanding and insight.  The section contains four highly complex reading passages containing approximately 55 to 65 lines of text followed by five to eight questions about each passage.

b.      "Analytical reasoning questions" for which multiple choice answers are based on a set of statements, rules or conditions that describe relationships among entities such as persons, places, things or events.  This section often referred to as "logic games," typically contains four short written passages followed by five to seven questions about each passage.

c.      "Logical reasoning questions" are included in two sections of the LSAT. Each logical reading question requires the test taker to read a short passage then answer one question about the passage.

33.     The LSAT is administered four times a year.  While many law schools permit the test be taken by December in order to gain admission for the following fall, the LSAC and many law schools advise to take the LSAT in June or October for the following year's admission.

## STATEMENT OF FACTS

34.     By application dated October 15, 2012, Plaintiff initiated a request for the following testing accommodations for the December 2012 LSAT: 20 additional minutes for the multiple choice section of the LSAT, 20 additional minutes for the Writing Sample section of the LSAT, 20 minute breaks between each section of the examination, and an alternate non-Scantron answer sheet.  Plaintiff's request was accompanied by a psychoeducational evaluation report and

evaluator form completed by her clinician, Ruth C. Heitin, Ph.D., as well as an evaluator form

completed by the physician who treats her cerebral palsy, Katherine Alter, M.D.

35.   In her pyschoeducational evaluation report, Dr. Heitin detailed her personal

observations of Plaintiff, as well as the clinical basis for her diagnosis of Learning Disorder,

NOS, and Developmental Coordination Disorder. Dr. Heitin also explained the rationale behind

her recommendations for extended time and a non-Scantron answer sheet.  She summarized:

> Ms. Bigby's gait was slow and laborious . . . used her left hand for
> writing and her right arm was not always effective in helping her
> stabilize her paper as she wrote.  In a seated position, Ms. Bigby
> more commonly sat with a curved spine, as maintaining upper
> body strength appeared to be a challenge as well.  More discretely,
> Ms. Bigby often struggled with visual tasks.  When she read, she
> used a pencil to aid her in tracking her eyes across the lines of text.
> In nearly all that she did, Ms. Bigby worked at a slow pace.
> Testing her required more than fifty percent more time than would
> be expected for the amount of work completed.  She was also
> clearly fatigued by the sustained work in the testing.

36.   Dr. Alter indicated on her Evaluation Report form that Plaintiff "[is] unable to use

Scantron sheet due to impaired accuracy/motor control" and "requires extra time testing due to

slow motor skills… these problems severely limit patient's ability to write at speed . . . [she] has

muscle spasms and pain due to cerebral palsy."  Dr. Alter further explained: "[p]rolonged sitting

or standing aggravates these problems.  She should be allowed to take frequent breaks to

reposition and walk to relieve spams . . . she also needs extra time to get to and from the toilet

due to her mobility impairments."

37.   By letter of October 19, 2012 Defendant LSAC informed Plaintiff that her request

for accommodations was denied in full.  The LSAC argued that Plaintiff was not protected under

the law because she had "no history of formal accommodation."  The LSAC further argued that

Plaintiff's "performance on academic measures, including the SAT and GMAT without

accommodations, was not impaired." The LSAC also cited to Plaintiff's scores on various psychometric assessments in isolation and attributed meaning and significance to them that is inconsistent with their accepted use in clinical practice. Lastly, the LSAC directed Plaintiff to submit a Vision Evaluation Report from her ophthalmologist in order to have her "visual tracking and visual spatial disorders considered."

38.     In or around late October 2012 Plaintiff's ophthalmologist, John F. Anderschat, M.D., completed the specified Visual Evaluation Report form (dated October 25, 2012). Dr. Anderschat indicated that Plaintiff's visual disabilities should be accommodated with at least 20 minutes extended time for each section of the LSAT, as well as an alternate non-Scantron answer sheet.

39.     Plaintiff submitted Dr. Anderschat's form, as well as a letter from Dr. Heitin that was written in response to the LSAC's denial letter. Dr. Heitin explained, in part:

> The only achievement testing result that you cited was her Broad
> Reading Standard Score of 102 on the WJ III Tests of
> Achievement. However, as my report noted, it was Ms. Bigby's
> reading rate that was most affected by her disabilities, and this
> was evidenced across two achievement batteries. . . .   In more
> comprehensive assessment of her reading on the Nelson-Denny
> Reading Test, Form G, Ms. Bigby's Reading Rate measured only
> in the first percentile compared to both norm groups used. . . .
> Compared to any measure of Ms. Bigby's ability, her reading rate
> again evidenced severely discrepant and unpredicted performance.
> Clearly, the impact of her disabilities affects her performance in
> the rate and efficiency of her reading and my report noted this.
> You also noted that Ms. Bigby never had formal accommodations
> before. . . .   In a recent telephone conversation with Ms. Bigby's
> high school guidance counselor, he admitted to me that in looking
> back, he realizes they should have formalized Ms. Bigby's
> accommodations.

40.     By letter dated November 20, 2012  Defendant LSAC informed Plaintiff that even after reviewing Dr. Anderschat's information, it did not believe that she was disabled and entitled to accommodation, and argued:

> Your file was reviewed with the assistance of a Vision Rehabilitation Specialist.  You have been monocular since childhood with no previous accommodations on standardized tests. Your acuities are good both at distance and near point and your evaluator did not provide any clinical data to support the assumption that your reading skills may be diminished due to your visual condition.  A significant visual disorder has not been established based on the documentation.

41.     Plaintiff informed Dr. Heitin of the Defendants' second denial, and by email dated November 26, 2012, Dr. Heitin contacted LSAC Accommodated Testing.  She wrote:

> On October 23, 2012 I submitted a letter of appeal in the denial of accommodations for Ms.  Bigby. . . .  I requested feedback about how I might better address the recommendations I made for Ms. Bigby and her need for accommodations. . . .  I have been a professional in private practice since 1972 as a specialist in learning disabilities and working with students with special needs… In my experience, I have never seen a case like this in which I have been so surprised and confused by the LSAC denial of accommodations.  Once again, I am requesting that a professional in your office contact me.

Dr. Heiten was never contacted.

42.     Plaintiff sat for the December 2012 administration of the LSAT without any of the accommodations recommended by her psychologist, physician, and ophthalmologist, and thus was denied an opportunity to compete on a level playing field with other test takers. Plaintiff did not have sufficient time to read and complete all of the questions and had to guess on a significant portion of the examination.  Plaintiff's resulting LSAT score (144 of a possible 180, at the 24th percentile) was in no way an accurate measure of her knowledge and abilities.

43.     In March 2013 Plaintiff retained the counsel of Jo Anne Simon, P.C. to prepare a request for reconsideration of the Defendant LSAC's denial of her multiple requests for accommodation.  Plaintiff wanted to sit for the June 2013 administration of the LSAC (with the necessary accommodations) and apply for admission to law school for Fall 2013.  She was waitlisted at several schools that advised her to take the LSAT again so that she can obtain a higher score that was a more accurate assessment of analytical abilities and knowledge that she has displayed in college, graduate school, and in her employment at the United States Department of Defense.

44.     By letter of May 6, 2013 addressed to Defendant's General Counsel, Joan E. Van Tol, Plaintiff's counsel Jo Anne Simon offered the following additional documentation: (a) Declaration of Jessica Bigby, dated May 6, 2013; (b) Letter from John F. Anderschat, M.D., dated April 29, 2013; (c) Letter from Katherine Alter, M.D., dated April 24, 2013; and (d) Letter from Ruth C. Heitin, Ph.D., dated April 18, 2013.

a.     Plaintiff's statement explained, in greater detail, why the requested testing accommodations are necessary to level the playing field and allow her an equal opportunity to demonstrate her knowledge of the skills and subject matter that is tested by the LSAT.  She wrote:

> I have experienced the LSAT without extended time, and it has only made me all the more certain that I need extended time to have a fair opportunity to complete the exam.   We were given the Scantron sheet and I had my pencils.  I was not allowed to use anything to follow the bubbles (i.e., a ruler, index card), so I kept having to find my place.  This was tricky and time consuming for me because, when I see the same things over and over on a page, it is hard for me to pick out something specific.  I get a headache and have to go over each line a couple times just to make sure I am selecting the right letter.  The proctor asked us to all fill in the top portion with our name and all of the required information. I was obviously able to do it, but I was the last one to finish and look up.

12

By the time I finished carefully bubbling in the circles, my hand hurt and I hadn't even started the test yet. I read slower than most people, so I lost a lot of time trying to read and process the questions and answer choices. Then I would select an answer and have to bubble it in. I took longer than average person to bubble in as evidenced by my last place finish. I got through barely half the test section by the time the proctor called 5 minutes left. At that point, I just bubbled in answers so that I could at least try to have an answer for everything. I could not even get to the end just randomly bubbling with 5 minutes left because it takes me so much longer to bubble. For logic games, I had unique challenges because it takes me longer to make the designs. Spatially, it takes me longer to do the setup. I think that I only completed 2 of those, and attempted the bubble the rest in.

b.      Dr. Anderschat's letter was responsive to rationales articulated in the Defendants'

prior denial letters.  He explained:

> . . . because she has no binocular stereopsis, she fixates at distances with her right eye, and during reading she fixates mostly with her left eye.  To be clear, Jessica does not consciously decide which eye to use and when.  The LSAT is a relatively lengthy reading based exam, which means that Jessica's relying almost exclusively on her left eye is likely to cause fatigue should she not have the ability to take periodic rest breaks off-the-clock.  Additionally, Jessica will need more on-the-clock time than most people, who unlike her have functioning stereoscopic vision, to read the exam questions.  In your letter of November 20, 2012 to Jessica, you write "your acuities are good both at a distance and near point."  This is equivocal and misleading.  Jessica's depth perception is significantly impaired because her eyes are incapable of seeing at the same time, and when working at a near point (such as the distance at which most people read and complete a reading examination), these impairments are more pronounced.   If Jessica is to complete and answer the exam questions within the same time limits as most people, she is likely is to sacrifice accuracy for speed, and her recorded answers would not be an accurate measure of her abilities.

c.      Dr. Alter's letter explained how Plaintiff's cerebral palsy impacts her ability to

complete an exam such as the LSAT:

> Her disability affects her ability to takes notes, when filling out answer sheets (filling in bubbles) or for essay tests.  Jessica's pain

> is concentrated in her back and lower extremities.  However her chronic pain also has a whole body effect leading to generalized fatigue. . . . Jessica's fatigue also causes problems with concentration and focus, slowing her ability to read and process information… Her vision also negatively affects her ability to rapidly read and decode information on a written page.  She needs extra time to read and complete testing.  She also needs frequent rest breaks because of significant spasticity which leads to pain and muscle spasm.

    d.    Dr. Heitin administered additional testing and Plaintiff performed very poorly on these visual tracking assessments.  Dr. Heiten  explained:

> To further document the degree of Ms. Bigby's deficit in visual tracking, last month, on April 8, 2013, I administered additional testing.  Please note that these tests were not administered in the initial assessment because it was my professional opinion that doing so would be an unnecessary and onerous endeavor, given her obvious deficit.  However, given that an appeal has become necessary, Ms. Bigby was further assessed… These two tests entailed only about fifteen minutes of work for Ms. Bigby, but they were exhausting for her… it was not the content of the tests that taxed Ms. Bigby. . . .

    45.    Plaintiff's counsel's May 6, 2013 letter also cited to controlling psychoeducational, medical, and legal authorities that support Plaintiff's assertion that she is a person with disabilities protected by the ADA, and that she was entitled to all of the testing accommodations requested in order to best ensure equal access to the LSAT.

    46.    By letter of May 21, 2013, Ms. Van Tol responded, reiterated the LSAC's prior reasoning, and added:

> An analysis of Ms. Bigby's Candidate Item Response Report from the December 2012 LSAT does not support her claims that she is unable to use a Scantron form and that she cannot successfully complete the LSAT within the standard time limits.  In fact, her answers were marked precisely and consistently on the Scantron form and she reached each item in every section.  Her claim that she was only able to complete half the test is simply not supported by the evidence.  An analysis of Ms. Bigby's performance on the Reading Comprehension section of the LSAT shows that she

performed at the mean for that section; thus indicating that she is not impaired.  Although she performed less well on the analytical and logical reasoning sections of the test, there is no evidence that her performance was in any way affected by her claimed disabilities or that additional time would be an appropriate accommodation.

47.    Third Party review of a Scantron form cannot assess the condition, manner or duration in which it was completed, the time, effort or pain under which it was completed, nor whether Plaintiff had an equal opportunity to read the test passages and items as thoroughly as nondisabled test takers.

48.    Plaintiff, in her desire to improve her chances of admission to one of her wait-listed schools, submitted a request for reconsideration on August 7, 2013 and asked the Defendant to once again reconsider all of the previously submitted documentation.  By letter dated August 9, 2013, the LSAC denied Plaintiff's request once again.  Plaintiff has since been rejected from the law schools that were considering her application.

49.    Defendant's denial of Plaintiff's reasonable request is arbitrary, without basis in fact or in law, and is deliberately indifferent to Plaintiff's rights under the applicable laws. Providing Plaintiff extended time to read and answer the questions on the LSAC, a non-Scantron answer sheet, and off-the-clock breaks to stretch and relieve her muscle discomfort and pain would not give Plaintiff an unfair advantage.

50.    If Plaintiff does not take the LSAT with test modifications recommended by her psychologist. physician, and ophthalmologist that are necessary to best ensure that she has access to the LSAT, she will be irreparably harmed because she will lose the extensive time she has invested in preparation for the LSAT; she will be prevented from competing on a level playing field with other candidates sitting for the LSAT; and she will be further delayed or prevented

from proceeding with her application to law school. Further, Plaintiff's professional opportunities will be severely curtailed.

51.    The testing modifications requested by Plaintiff are the type of accommodations that have been granted to other test-takers with disabilities in prior administrations of the LSAT and would not fundamentally alter the test.

52.    Plaintiff is and will continue to be significantly harmed by Defendant's refusal to provide her the accommodations she needs so as to best ensure that the test results reflect that which the test is designed to measure rather than Plaintiff's cognitive, visual, and physical disabilities.

## FIRST CLAIM

### (Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*)

53.    Plaintiff hereby incorporates by reference paragraphs 1 through 52 of this Complaint as set forth herein.

54.    Plaintiff is a person with a disability in that she experiences a physical or mental impairment, which substantially limits one or more major life activities, including but not limited to, seeing, reading, writing, concentrating, learning, test taking, performing manual tasks, and walking, as well as the operation of the major bodily functions of the brain, neurological, and musculoskeletal systems. 42 U.S.C. § 12102 (2). Because of her disabilities she needs accommodations on the LSAT, including but not limited to extended time test for each section of the test.

55.    Plaintiff meets all the eligibility criteria for taking the LSAT.

56.     In amending the ADA in 2008, Congress mandated that the Equal Employment Opportunity Commission (EEOC) issue regulations restoring the applicability of the ADA to those individuals whom Congress originally intended to protect. 42 U.S.C. § 12010(b)(6).

57.     EEOC regulations provide that "[t]he primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA. Consistent with the Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the definition of "disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted . . ." 28 U.S.C. § 1630.1(c)(4).

58.     The ADA amendments expressly rejected earlier case law that created an inappropriately high level of limitation necessary to obtain coverage. 42 U.S.C. § 12102(4)(B) (incorporating findings and purposes of the ADAAA).

59.     The ADA amendments set out Rules of Construction for the interpretation of who is protected by the Act, and thus applies to all titles of the ADA.  42 U.S.C. § 12102(4).  Under those Rules, the regulations and its guidance further provide:

> The link between particular impairments and various major bodily functions should not be difficult to identify. Because impairments, by definition, affect the functioning of body systems, they will generally affect major bodily functions.

Appendix to Part 1630—Interpretive Guidance on Title I, 29 C.F.R. Part 1630.

60.     Title III of the ADA states in part, "[i]t is discriminatory to fail to make reasonable modifications to policies, practices and procedures when necessary to provide goods and services to a person with a disability."  42 U.S.C. § 12182(b)(2)(A)(ii).

61.     Title III regulations specifically provide that accommodating an individual with a disability may require a testing entity to change the length of the time for an exam and/or the manner in which the examination is given.  28 C.F.R. § 36.309 (b)(iii)(2).

17

62.     Defendant LSAC administers the LSAT, an examination related to applications and credentialing for postsecondary education, professional, and trade purposes, within the meaning of the ADA, 42 U.S.C. § 12189.

63.     The ADA requires Defendant to offer these examinations in a manner accessible to persons with disabilities.  42 U.S.C. § 12189.

64.     Title III regulations mandate that a private entity offering examinations modify its examinations as necessary to best ensure full and equal access to persons with disabilities, including through the provision of extra testing time to permit completion of such examinations. 28 C.F.R. §§ 36.309(b) & (c).

65.     The regulations prohibit Defendant LSAC from administering the LSAT without ensuring that the scores reported "accurately reflect the applicant's aptitude or achievement level or whatever other factor the test purports to measure, rather than reflecting the applicant's [disability]." 28 C.F.R. § 36.309(b)(1)(i).Plaintiff requires the requested testing accommodations to participate in a fair, full, and equal basis on the LSAT.  The modifications that Plaintiff needs would not impose a fundamental alteration but rather, would help to level the field and allow her aptitude and abilities to be fairly and accurately measured.

66.     The applicable regulatory guidance advises that:

> It is important to note, however, that the inclusion of this weight [given to a history of test accommodations in secondary schools or in post-secondary institutions] does not suggest that individuals without IEPs or Section 504 Plans are not also entitled to receive testing accommodations. Indeed, it is recommended that testing entities must consider the entirety of an applicant's history to determine whether that history, even without the context of a IEP or Section 504 Plan, indicates a need for accommodations.

67.     The applicable regulatory guidance further advises that:

18

> [r]eports from experts who have personal familiarity with the
> candidate should take precedence over those from, for example,
> reviewers for testing agencies, who have never personally met the
> candidate or conducted the requisite assessments for diagnosis and
> treatment.

Appendix A to 28 C.F.R. Part 36.

68.     Defendant LSAC has thus violated, and continues to violate Plaintiff's rights

under the ADA by intentionally denying her an equal opportunity to demonstrate her aptitude

and achievement level on the LSAT, or alternatively whatever it is that the LSAC purports to

measure by the LSAT.

69.     Defendant LSAC's policies and practices violate Plaintiff's rights under the ADA

and the regulations promulgated thereunder.  Defendant's discriminatory policies and practices

include, but are not limited to, its:

a.      Failure to timely grant accommodations when Plaintiff submitted the requisite

documentation consistent in all respects with the LSAC's own guidelines;

b.      Failure to give considerable weight to Plaintiff's evaluators' recommendations;

c.      Failure to provide an adequate explanation for the LSAC's request for additional

and/or more recent information; and

d.      Failure to engage in good faith in the interactive process to consider and

implement effective testing accommodations for Plaintiff's disability.

70.     Plaintiff will be irreparably harmed if the LSAC continues its illegal refusal to

provide her the test modifications specifically recommended by her clinicians, in that:

a.      Given her experience of taking the LSAT without the extended  time

accommodation to which she is entitled under the ADA, Plaintiff is justifiably concerned that she

19

will never achieve an LSAT score which will enable her to be accepted by an American Bar Association accredited law school;

b.      Plaintiff's law school career will be placed on hold or forestalled because an adequate score on the LSAT is a prerequisite to the pursuit of a law school education;

c.      Requiring Plaintiff to take the LSAT without sufficient accommodation has, and will continue to, put her at a distinct disadvantage given her constellation of disabilities;

d.      Reduced performance on the LSAT as a result of not receiving the proper testing accommodations significantly reduces Plaintiff's future professional career options, and

e.      Taking the LSAT without the test modifications requested has been, and will continue to be, a waste of Plaintiff's time and money.

71.      The LSAC's conduct constitutes an ongoing and continuous violation of the ADA.  Unless permanently enjoined from doing so, Defendant will continue to violate said law.  Said conduct, unless enjoined, will continue to inflict injuries for which Plaintiff has no adequate remedy at law.  Consequently, Plaintiff is entitled to injunctive relief and reasonable attorney's fees under the ADA, 42 U.S.C. § 12188.

72.      A present and actual controversy exists between Plaintiff and Defendant LSAC concerning their rights and respective duties.  Plaintiff contends that Defendant LSAC violated and continues to violate her rights under the ADA.  Based upon information and belief, Defendant LSAC denies these allegations, thus declaratory relief is necessary and appropriate.

73.      Plaintiff seeks a judicial declaration of the rights and duties of the respective parties accordingly.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays for judgment as follows:

20

A.      An order compelling the LSAC, or those acting as agents for or in concert with it, to provide necessary test accommodations to Plaintiff, which shall include 20 additional minutes for each section of the LSAT, 20 minutes of off-the-clock break time between each section of the LSAT, and a non-Scantron answer sheet;

B.      An order requiring the LSAC to modify its policies, practices and procedures so as to give Plaintiff an equal opportunity to take the LSAT and to cease its practice of identifying the scores of those taking the LSAT with extended time accommodations to law schools, thus disclosing her disability status;

C.      An order granting declaratory relief;

D.      Enter judgment against the Defendant awarding Plaintiff recovery of her reasonable attorney's fees, costs and expenses incurred pursuant to 42 U.S.C. §12188; and

E.      Award for such other and further relief as the Court may deem just and proper.

Respectfully submitted,


  /s/ Joseph B. Espo
Joseph B. Espo, D.C. Bar No. 429699
BROWN GOLDSTEIN LEVY
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland  21202
Tel.:  410.962.1030
Fax:  410.385.0869
jbe@browngold.com

Jo Anne Simon (*pro hac vice*)
JO ANNE SIMON, P.C.
356 Fulton Street, 3rd Floor
Brooklyn, New York  11201
Tel:  718-852-3528
Fax:  718-875-5728
JoAnne@JoAnneSimon.com